2008-NMCA-141

195 P.3d 870

**Florian CASTILLO and Molly Martinez, Plaintiffs–Appellees,**

v.

**CITY OF LAS VEGAS, New Mexico, Defendant–Appellant.**

No. 26,758.

Court of Appeals of New Mexico.

Aug. 27, 2008.

Law Offices of Daniel J. O'Friel, Pierre Levy, Felker, Ish, Ritchie & Geer, P.A., Carol J. Ritchie, Santa Fe, NM, for Appellees.

Patricia A. Padrino, Gregory L. Biehler, Albuquerque, NM, for Appellant.

**OPINION**

CASTILLO, Judge.

{1} Plaintiffs Florian Castillo and Molly Martinez (Plaintiffs) sued the City of Las Vegas (City) for personal injury and damage caused to their home by a backup in the city sewer system. The jury awarded Plaintiffs damages for the injury to the property and awarded Mr. Castillo damages for the emotional distress that he suffered as a result of the property damage. The City appeals, raising four claims of error. We affirm the judgment as to the property damage, but we reverse the judgment as to the emotional distress damages because in this case, negligent property damage is not a basis for an emotional distress damages award.

## I. BACKGROUND

{2} Plaintiffs lived together as a couple in a home owned by Mr. Castillo. In September 2003, the City's sewer system backed up, causing a pool of sewer water to accumulate under the bathroom floor of the home. Plaintiffs believed that this pool formed mold and caused the walls of the home to shift. The City admitted liability for the incident, and the only issue tried in the trial court was damages. The case was complicated by the fact that the home had been damaged by a prior sewer backup in 2002 and then later by a flood in 2005. Plaintiffs did not claim damages against the City for either of those incidents, and one of the primary difficulties at trial was sorting out what damage was caused by which incident because the jury was only to award damages for the 2003 backup.

{3} At trial, Mr. Castillo testified that he and Ms. Martinez moved out of the home after the 2002 backup but that at that time they intended to return. After the 2003 backup, however, he gave up on the idea of fixing the home and moving back in because the home seemed beyond repair. Plaintiffs introduced the expert testimony of two appraisers: one who had appraised the home in 2000, prior to any of the damage and one who had appraised it in 2005, after both sewer backups and the flood. The City relied on cross-examination to attempt to show that the damage to the home was caused primarily by the 2002 backup and the 2005 flood. The City did not call any witnesses to testify regarding the damage to the home as a result of the 2003 backup or how the 2003 backup, as opposed to the 2002 backup or the 2005 flood, affected the value of the home.

{4} After the close of evidence, the jury was instructed that it could award Plaintiffs damages for loss of use and loss of value to the home that was caused by the 2003 backup and that it could award damages for Mr. Castillo's mental anguish, which resulted from the damage to the home caused by that backup. The jury was precluded from awarding Ms. Martinez any damages for emotional distress. The jury awarded Plaintiffs $30,000 for damage to the home and $10,000 to Mr. Castillo for the emotional distress caused by the backup. The City appeals.

## II. DISCUSSION

{5} The City makes four arguments on appeal: (1) Ms. Martinez did not have standing to sue the City, (2) the trial court improperly admitted expert testimony, (3) the trial court did not properly instruct the jury about calculating damages, and (4) the trial court improperly allowed the jury to award damages for emotional distress. We address each argument in turn.

## A. Standing

■ {6} Before trial, the City moved for summary judgment on Ms. Martinez's claims and argued that she lacked standing to bring suit (1) because she was not the title owner of the home and (2) because she stated in her deposition that her emotional distress was caused by Mr. Castillo's depression and not by the property damage. The trial court apparently never ruled on the motion for summary judgment, but the City renewed its argument in a motion for a directed verdict. The trial court denied the motion as to standing but granted the motion as to Ms. Martinez's emotional distress claim. The result of the trial court's ruling was that Ms. Martinez could not recover damages for emotional distress, but that she could remain as a plaintiff; thus, the only remaining claims were for damage to the home and damages for Mr. Castillo's emotional distress. The City appeals the denial of its motion and argues that Ms. Martinez did not have standing to sue for damage to the property. This is a question of law that we review de novo.

See *ACLU v. City of Albuquerque*, 2008-NMSC-045, ¶ 6, 144 N.M. 471, 188 P.3d 1222.

{7} "[A]s a matter of judicial policy if not of jurisdictional necessity, our courts have generally required that a litigant demonstrate injury in fact, causation, and redressability to invoke the court's authority to decide the merits of a case." *Id.* ¶ 10. The City argues that Ms. Martinez suffered no injury in fact and, as a result, she had no standing to participate in the cause of action. We observe that the jury awarded no separate damages to Ms. Martinez. Rather, the award for actual damages went to both Plaintiffs, and the award for emotional damages went solely to Mr. Castillo. Although the City suggests that the jury awarded the actual damages to a "family" and that the award might have been less had Ms. Martinez not been a party, there is no evidence to support such speculation. To the contrary, the jury was instructed that the measure of damages was the "[l]oss of use and loss of value to the residence."

{8} If this Court were to reverse the trial court's determination on the issue of Ms. Martinez's standing, we would remand for the trial court to dismiss her from the case. We would not, however, require a new trial because the damage awards would not be affected by her absence as a party. *See* Rule 1-061 NMRA ("No error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice."); *Fahrbach v. Diamond Shamrock, Inc.*, 1996-NMSC-063, 122 N.M. 543, 552, 928 P.2d 269, 278 (interpreting Rule 1-061 to require direct evidence that an error contributed to or directly resulted in the jury's verdict and refusing to speculate that an error influenced the jury). Accordingly, we conclude that the amount of the verdict would not be affected by Ms. Martinez's participation as a plaintiff and, as such, even if it were error to allow Ms. Martinez to remain as a party plaintiff, such error would be harmless.

## B. Expert Testimony

{9} The City argues that the trial court erred in admitting testimony from two different appraisers whose appraisals did not reflect the value of the property either immediately before or immediately after the 2003 backup. We review the admission of evidence for an abuse of discretion. *See Coates v. Wal–Mart Stores, Inc.,* 1999–NMSC–013, ¶ 36, 127 N.M. 47, 976 P.2d 999.

{10} The City argues that *Leigh v. Village of Los Lunas,* 2005–NMCA–025, ¶ 13, 137 N.M. 119, 108 P.3d 525, requires us to conclude that the appraiser's testimony was inadmissible to measure Plaintiffs' damages. In *Leigh,* this Court held that where the proper measure of compensation for a governmental taking was the difference between the fair market value of the property before the taking and the fair market value after the taking, it was error to admit into evidence an appraisal that did not follow the before and after rule. *Id.* ¶ 21. The taking in *Leigh* occurred when the Village of Los Lunas placed a drainage pond next to the plaintiffs' property in violation of a restrictive covenant. *Id.* ¶¶ 6, 8. The appraisal that the plaintiffs introduced at trial did not value their property before and after the installation of the pond, but rather valued the property with and without the pond—a valuation that examined a single point in time. *Id.* ¶ 23. This Court held that because the appraisal was not sufficient to establish the value of the property before and after the taking, it should not have been admitted into evidence. *Id.* ¶ 27.

{11} In this case, Plaintiffs introduced testimony from an appraiser who appraised the property in 1999 and then again in 2000—prior to any of the three incidents that damaged their home. In 2000, the appraiser valued the home at $80,000. A second appraiser testified that in 2005, after the two sewer backups and the flood, the house was worth $37,000. Neither expert testified specifically about what the value of the house would have been immediately before the 2003 backup, but after the damage done by the 2002 backup, or immediately after the 2003 backup, but before the 2005 flood. The City argues that because the appraisers did not value the home immediately before and after the 2003 backup, their testimony was prohibited under *Leigh.* We disagree and conclude that *Leigh* is distinguishable on two bases.

{12} First, we note that in *Leigh,* this Court evaluated the appraiser's report in the context of a "taking of a restrictive covenant." *Id.* ¶ 18. The general rule stated in *Leigh* is that "[d]amages for the partial taking of property by an easement are measured as the difference between the fair market value before and after the taking." *Id.* ¶ 13. It is well established that money damages in a takings claim are calculated based on a jury determination of the "fair market value" of the property in question. *County of Dona Ana ex rel. Bd. of County Comm'rs v. Bennett,* 116 N.M. 778, 784, 867 P.2d 1160, 1166 (1994) (preserving "well-established New Mexico law, incorporated in UJI Civil 13–704 [NMRA], that when there is a partial taking of a larger tract of land, the landowner's damages are measured by the value of the entire tract before the taking less the value of the remaining tract after the taking"). The before and after rule is the means to calculate the fair market value of property that remains after a partial taking. NMSA 1978, § 42A–1–26 (1981). In the present case, we have a simple tort cause of action, which does not include claims relating to an easement or a taking. In a claim for the loss of property, there is no required means of calculating damages, and the before and after rule is merely one way in which the jury can be instructed to view the evidence. *See, e.g.,* UJI 13–1812 NMRA ("In determining property damages, if any, you may award the fair market value of the property immediately before the occurrence."); UJI 13–1813 NMRA ("In determining property damages, if any, you may award the reasonable expense of necessary repairs to the property which was damaged."); *Duke City Lumber Co. v. Terrel,* 88 N.M. 299, 302, 540 P.2d 229, 232 (1975) (explaining that evaluations of value before and after damage to property is not the only "method by which the claimed damages could properly have been measured").

{13} Second, the appraisals conducted in this case provided relevant information about

the general value of the property. *See* Rule 11–402 NMRA ("All relevant evidence is admissible[.]"). The appraisals conducted in 2000 and 2005 provided information about the market value of the property prior to any flooding and after three floods. No appraisal was conducted immediately before and after the particular damage that is the subject of the cause of action—but the question of causation of damages for which the City is liable is apart from the question of whether the appraisal testimony was relevant to the proceedings. *See* Rule 11–401 NMRA (" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.").

{14} Additionally, the expert in *Leigh* conducted a "with and without" analysis—the value of the property with a drainage pond and the value without the drainage pond. 2005–NMCA–025, ¶¶ 22–24. That analysis failed to accurately assess the value of the property after the taking by comparing it to other similar properties next to drainage ponds. *See id.* ¶ 24. In the present case, the appraisals did reflect the value of the property before and after the three incidents of flooding. The question remained for the jury to determine what portion of the reduction in value could be attributed to the 2003 backup. *See C.E. Alexander & Sons, Inc. v. DEC Int'l, Inc.*, 112 N.M. 89, 95, 811 P.2d 899, 905 (1991) ("It is within the province of the jury to determine the proper amount of damages."). Accordingly, we hold that the trial court did not abuse its discretion in determining that the appraisers' testimony was relevant to damages. *Cf. Ponce v. Butts*, 104 N.M. 280, 287, 720 P.2d 315, 322 (Ct.App. 1986) ("The lack of certainty that will prevent a recovery is uncertainty as to the fact of damages and not as to the amount.").

### C. Jury Instructions

{15} The City argues that the jury was improperly instructed to consider Mr. Castillo's loss of use of the property and that the trial court improperly refused to instruct the jury about the distinction between permanent and temporary damage to real property.

We consider each challenge in turn and begin with the loss of use instruction.

### 1. Loss of Use

{16} The trial court instructed the jury that it could award Plaintiffs damages for "[l]oss of use and loss of value" to the home. The City raises three different arguments regarding the claimed error, but does not indicate how any of these were preserved. *See* Rule 12–213(A)(4) NMRA (requiring an appellant to provide "a statement explaining how [each] issue was preserved in the court below"). As we conclude that the City preserved only the argument that the evidence did not support a loss of use instruction, we limit our analysis to that contention.

{17} The propriety of a jury instruction is a mixed question of fact and law, which we review de novo. *See State v. Gaines*, 2001–NMSC–036, ¶ 4, 131 N.M. 347, 36 P.3d 438. Plaintiffs were entitled to have the jury instructed on their theory of loss of use if there was evidence to support that theory. *See Thompson Drilling, Inc. v. Romig*, 105 N.M. 701, 705, 736 P.2d 979, 983 (1987). In reviewing the evidence in support of the theory, this Court construes the facts and the inferences that may reasonably be drawn from them in the light most favorable to the party requesting the instruction. *See Burnham v. Yellow Checker Cab, Inc.*, 74 N.M. 125, 129, 391 P.2d 413, 415 (1964).

{18} The City argues that there was no evidence to support a loss of use instruction because Plaintiffs had moved out of the home in 2002, after the first sewer backup. The City contends that because Plaintiffs no longer lived in the home at the time of the 2003 backup, that backup could not have caused them any loss of use. Mr. Castillo, however, testified that he intended to return to the home after the 2002 backup and that it was only after the 2003 backup that he gave up on his plans to restore the home and move back in. Viewing this evidence in the light most favorable to Plaintiffs and drawing all reasonable inferences in their favor, one could conclude from this testimony that had the 2003 sewer backup not occurred, Plaintiffs would have gone back to, repaired, and

used the home. The City was free to—and did—argue to the jury that Plaintiffs' loss of use of the property was caused solely by the 2002 backup and that the 2003 backup did not cause any additional loss of use. Accordingly, we conclude that the trial court did not err in giving an instruction on loss of use.

### 2. Temporary Versus Permanent Damage to Property

{19} At trial, the court rejected two of the City's proposed jury instructions on damages to the property. These instructions were based on *Amoco Production Co. v. Carter Farms Co.*, 103 N.M. 117, 703 P.2d 894 (1985), and would have distinguished between the measure of damages to be awarded for a temporary injury to real property from that to be awarded for a permanent injury to real property. The City claims that it was error to reject these instructions. Since the present case was filed, however, our Supreme Court has abrogated the rigid temporary/permanent distinction for damage to real property set out in *Carter Farms* and has held instead that a jury should "consider the cost to repair or the diminution in value, without regard to whether the injury was permanent or temporary" and then "award the most reasonable means of making the [plaintiffs] whole." *McNeill v. Burlington Res. Oil & Gas Co.*, 2008–NMSC–022, ¶¶ 27, 29, 143 N.M. 740, 182 P.3d 121. Civil decisions such as *McNeill* are presumed to be retroactive, *see Beavers v. Johnson Controls World Servs., Inc.*, 118 N.M. 391, 397–98, 881 P.2d 1376, 1382–83 (1994), and the City has not sought to supplement its briefs to argue that *McNeill* should not apply to this case. *See* Rule 12–213(D)(2) (stating that after briefs have been filed, it is counsel's responsibility to apprise this Court of "pertinent and significant authorities" related to the case on appeal). Accordingly, because the City's proposed instructions were not a correct statement of the law under *McNeill*, we find no error in their refusal.

{20} Even if it were error for the trial court to refuse these instructions, the City has not demonstrated that it was prejudiced thereby—a requirement when seeking reversal. *See Benavidez v. City of Gallup*, 2007–NMSC–026, ¶ 19, 141 N.M. 808, 161 P.3d 853. "Even the slightest evidence of prejudice will suffice, and all doubt is resolved in favor of the complaining party." *Id.* (internal quotation marks and citation omitted). Because the City has not argued, much less shown, that it was prejudiced, any error in the trial court's refusal to give the proposed instructions would not require reversal.

### D. Emotional Distress Damages

{21} Mr. Castillo presented evidence at trial that he was emotionally distressed by the damage caused to his home, and the trial court instructed the jury that it could award Mr. Castillo damages for his mental anguish. The jury awarded him $10,000 in emotional damages. The City appeals this award, arguing that New Mexico law does not permit a plaintiff to recover damages for emotional distress caused by negligent damage to property. This is a question of law that we review de novo. *See Montoya v. Pearson*, 2006–NMCA–097, ¶ 5, 140 N.M. 243, 142 P.3d 11. Mr. Castillo based his claim for emotional distress damages solely on "the economic damages he sustained when [the] family home was damaged . . . as a result of the second sewer back up." After considering the narrow circumstances under which our courts currently permit an award of damages for emotional distress and the positions of other jurisdictions under circumstances similar to the present case, we conclude that a plaintiff may not recover for emotional distress based solely on a claim for negligent damage to property.

{22} Our courts have limited the availability of damages for emotional distress. *See Williams v. Stewart*, 2005–NMCA–061, ¶ 38, 137 N.M. 420, 112 P.3d 281. Such damages are available for plaintiffs who prevail on a claim for negligent or intentional infliction of emotional distress. *See Baldonado v. El Paso Natural Gas Co.*, 2008–NMSC–005, ¶ 27, 143 N.M. 288, 176 P.3d 277 (intentional infliction of emotional distress); *Fernandez v. Walgreen Hastings Co.*, 1998–NMSC–039, ¶ 6, 126 N.M. 263, 968 P.2d 774 (negligent infliction of emotional

distress). In addition, compensation for emotional distress is permitted when a plaintiff establishes loss of consortium, intentional misconduct, defamation, or a physical injury. *See Romero v. Byers*, 117 N.M. 422, 425, 426, 872 P.2d 840, 843, 844 (1994) (loss of consortium); *Chavez v. Manville Prods. Corp.*, 108 N.M. 643, 649, 777 P.2d 371, 377 (1989) (intentional torts); *Marchiondo v. Brown*, 98 N.M. 394, 402, 649 P.2d 462, 470 (1982) (defamation); *Higgins v. Hermes*, 89 N.M. 379, 381, 552 P.2d 1227, 1229 (Ct.App.1976) (physical injury). In order to fully consider whether property damage is a sufficient basis for emotional distress damages, we take this opportunity to review the specific circumstances under which New Mexico courts have previously considered emotional distress damages.

{23} Recovery for negligent infliction of emotional distress (NIED) is limited to situations in which "a bystander who [suffers] severe emotional shock as a result of witnessing a sudden, traumatic event that causes serious injury or death to a family member." *Fernandez*, 1998-NMSC-039, ¶ 6, 126 N.M. 263, 968 P.2d 774. The plaintiff in *Fernandez* watched her baby granddaughter slowly suffocate as the result of a negligently filled prescription. *Id.* ¶ 1. These facts were insufficient, however, to support a claim for NIED because it was not possible to identify a "sudden, traumatic, injury-producing event." *Id.* ¶ 19. As a result, the *Fernandez* Court was required to "assume that [the p]laintiff's shock and emotional distress resulted instead from witnessing the suffering and death of the victim, which, although tragic, is not compensable under NIED." *Id.* The one exception to the bystander limitation on recovery for NIED is discussed in *Madrid v. Lincoln County Medical Center*, where our Supreme Court dealt with a unique fact pattern regarding exposure to HIV. 1996-NMSC-049, ¶ 1, 122 N.M. 269, 923 P.2d 1154. The Court concluded that "[s]ound public policy supports recognition of a cause of action for emotional-distress damages in favor of one who fears that the negligence of another has caused him or her to contract HIV through a medically sound channel of transmission." *Id.* ¶ 31.

{24} The tort of intentional infliction of emotional distress (IIED) "provides recovery to victims of socially reprehensible conduct." *Baldonado*, 2008-NMSC-005, ¶ 24, 143 N.M. 288, 176 P.3d 277 (internal quotation marks and citation omitted). Our Supreme Court has limited recovery for IIED to claims in which the plaintiff can establish, among other things, extreme and outrageous conduct. *Trujillo v. N. Rio Arriba Elec. Coop., Inc.*, 2002-NMSC-004, ¶ 25, 131 N.M. 607, 41 P.3d 333. "The Restatement [ (Second) of Torts § 46 cmt. d (1965) ] describes extreme and outrageous conduct as that which is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Trujillo*, 2002-NMSC-004, ¶ 25, 131 N.M. 607, 41 P.3d 333. In *Baldonado*, a gas explosion resulted in a fireball, which killed twelve members of an extended family. 2005-NMSC-005, ¶ 3, 137 N.M. 174, 108 P.3d 1032. The plaintiff firefighters alleged that the gas company defendant had failed to properly design and maintain gas pipelines, that the defendant had been earlier cited for the failure, and that the defendant had previously experienced the consequences of such failure in the form of two explosions. *Id.* ¶ 35. This knowledge, combined with the defendant's obligations under federal law to actively cooperate with firefighters, led our Supreme Court to conclude that the defendant's conduct was extreme and outrageous. *Id.* ¶¶ 33, 36. In contrast, the *Trujillo* Court rejected a fired employee's claim for IIED. 2002-NMSC-004, ¶¶ 27-28. The Court noted that "[b]eing fired is a common occurrence that rarely rises to the level of being beyond all possible bounds of decency and utterly intolerable in a civilized community" and that the plaintiff did not provide evidence to suggest that the defendant employer's conduct was extreme and outrageous. *Id.* ¶ 27 (internal quotation marks omitted). In addition, the Court determined that the employee did not suffer from distress "so severe that no reasonable [person] could be expected to endure it." *Id.* ¶ 28 (alteration in original) (internal quotation marks and citation omitted).

{25} "The consortium right is for the emotional distress that a spouse suffers because of the loss of ... society." *Romero,* 117 N.M. at 426, 872 P.2d at 844. The right to recover for this form of emotional distress has been extended to grandparents, *Fernandez,* 1998–NMSC–039, ¶ 24, 126 N.M. 263, 968 P.2d 774, unmarried co-habitants, *Lozoya v. Sanchez,* 2003–NMSC–009, ¶ 17, 31, 133 N.M. 579, 66 P.3d 948, *abrogated on other grounds, Heath v. La Mariana Apartments,* 2008–NMSC–017, ¶ 21, 143 N.M. 657, 180 P.3d 664, and children. *State Farm Mut. Auto. Ins. Co. v. Luebbers,* 2005–NMCA–112, ¶ 37, 138 N.M. 289, 119 P.3d 169. In extending this right to recovery, the *Lozoya* Court explained that loss of consortium "is a method of compensation for one who has suffered the loss of a significant relational interest." 2003–NMSC–009, ¶ 23, 133 N.M. 579, 66 P.3d 948.

{26} Our Supreme Court has also "consistently allowed recovery for emotional harm in intentional tort cases." *Chavez,* 108 N.M. at 649, 777 P.2d at 377. The *Chavez* Court permitted recovery for emotional distress in an action for retaliatory discharge. *Id.* The plaintiff employee was a production supervisor at a perlite ore processing mill. *Id.* at 644, 777 P.2d at 372. The defendant employer asked the plaintiff to participate in a lobbying effort, but the plaintiff refused. *Id.* The plant manager nevertheless sent a notice to a senator, which urged support of certain legislation and which included the plaintiff's signature. *Id.* The plaintiff had not signed the document and after he confronted his supervisors about the misappropriation of his name, the plaintiff was fired. *Id.* Under these circumstances, the *Chavez* court concluded that full compensation included recovery for emotional harm. *Id.* at 649, 777 P.2d at 377; *see Akutagawa v. Laflin, Pick & Heer, P.A.,* 2005–NMCA–132, ¶ 22, 138 N.M. 774, 126 P.3d 1138 ("There must be a direct violation of the plaintiff's rights by willful, wanton or malicious conduct; mere negligence is not sufficient." (internal quotation marks and citation omitted)). Additionally, a plaintiff may recover emotional distress damages in defamation cases. *Marchiondo,* 98 N.M. at 402, 649 P.2d at 470. In defamation causes of action, emotional distress is considered part of the actual harm to the plaintiff: "the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering." *Id.* (internal quotation marks and citation omitted). Finally, in New Mexico, a plaintiff in an ordinary negligence action can recover for emotional distress that results from a physical injury as part of his general damages. *Higgins,* 89 N.M. at 381, 552 P.2d at 1229.

{27} The emotional damages claimed by Mr. Castillo in the present case bear no relation to any of the claims described in the preceding paragraphs—those in which emotional distress claims were permitted. Mr. Castillo alleged that as a result of the flooding, he was forced to live elsewhere and that he suffered "serious physical, psychological and emotional injuries." During his deposition, Mr. Castillo acknowledged that he did not suffer a physical injury. When asked at trial, Mr. Castillo said that the damage to his house made him feel "terrible—just like losing part of the family." Although we are sympathetic, we have explained before that "[t]his is precisely the type of emotional distress that our cases require to be suffered by people living in society without resorting to the courts for redress." *Jones v. Schoellkopf,* 2005–NMCA–124, ¶ 29, 138 N.M. 477, 122 P.3d 844. Mr. Castillo offered no proof of personal injury, and "there are no allegations or proof of willful, wanton, or malicious conduct[;] therefore[,] a claim for emotional distress damages will not lie." *Akutagawa,* 2005–NMCA–132, ¶ 22, 138 N.M. 774, 126 P.3d 1138.

{28} This case more closely resembles cases in which the courts have determined that a plaintiff's loss can be adequately compensated by economic damages. *See Akutagawa,* 2005–NMCA–132, ¶ 23, 138 N.M. 774, 126 P.3d 1138 (refusing to allow emotional damages in part because the "foreseeable result of an attorney's negligence typically extends only to economic loss"); *Williams,* 2005–NMCA–061, ¶ 35, 137 N.M. 420, 112 P.3d 281 ("[C]ases involving actionable fraud have been commercial in nature, and the damage awards have been calculated accord-

ingly."); *Hubbard v. Albuquerque Truck Ctr., Ltd.,* 1998–NMCA–058, ¶ 15, 125 N.M. 153, 958 P.2d 111 ("[D]amage awards should provide full and just compensation for the injured party[, and] [f]ull and just compensation is synonymous with the concept of making the injured person whole." (internal quotation marks and citation omitted)); 1 Dan B. Dobbs, *Dobbs Law of Remedies,* § 5.15(3), at 896 (2d ed. 1993) ("In the property cases, the rule against mental anguish recovery is merely a rule that objective market value of the property usually marks the limits of recovery[.]").

{29} Other jurisdictions have reached similar results. *City of Tyler v. Likes,* 962 S.W.2d 489 (Tex.1997), presented the Supreme Court of Texas with a factual scenario similar to ours. In *Likes,* the plaintiffs' home was damaged by flood waters that overflowed from a nearby culvert. *Id.* at 493. The plaintiffs sued the city for, among other things, negligent construction and maintenance of the culvert and for mental anguish. *Id.* The court held in relevant part that "mental anguish based solely on negligent property damage is not compensable as a matter of law" and that "loss in market value of [the] property caused by the defendant's negligence" is the proper measure of damages. 962 S.W.2d at 497. The *Likes* court offered the following explanation:

> Because a plaintiff whose property has been harmed can ordinarily recover fully for that loss through economic damages, our reluctance to leave a legally injured plaintiff with no remedy at all, which has rightfully influenced courts to look favorably on awarding mental anguish damages, does not come into play in cases where the primary injury is to property.

*Id.*

{30} Similarly, in *Iannotti v. City of Amsterdam,* 225 A.D.2d 990, 639 N.Y.S.2d 537 (1996), the plaintiffs sought recovery for mental anguish based on their allegations that the city negligently caused or permitted "a vast quantity of raw sewage to enter the cellar of the[ir] premises." *Id.* at 538. The reviewing court upheld the lower court's grant of summary judgment to the city because the plaintiffs provided no "com-petent evidence of contemporaneous or consequential physical harm." *Id. Dobbins v. Washington Suburban Sanitary Commission,* 338 Md. 341, 658 A.2d 675 (1995) involved plaintiffs whose home twice flooded after water main breaks. *Id.* at 675. The plaintiffs sought damages for personal injury, which were based entirely on emotional harm. *Id.* at 676. The court affirmed summary judgment for the city for two reasons: "(1) ordinarily, emotional injuries are not the consequences that ensue in the ordinary and natural course of events from negligently inflicted property damage and (2) such injuries should not be contemplated, in light of all the circumstances, as a natural and probable consequence of a negligently inflicted injury to property." *Id.* at 679 (internal quotation marks omitted). The *Dobbins* court concluded that "a plaintiff cannot ordinarily recover for emotional injuries sustained solely as a result of negligently inflicted damage to the plaintiff's property." *Id.* at 680; *see* Dobbs, *supra,* § 5.15(3), at 894 ("In general, one whose property is damaged, converted or destroyed is not entitled to recover for emotional distress or sentimental attachment to the property.").

{31} We note that Mr. Castillo does not argue that his home had an intrinsic value apart from the market value—that his sentimental attachment to his home justified a damage award greater than the market value of the home. Our Supreme Court has considered cases in which lost property has intrinsic value that cannot be compensated by the market value of the property. In those cases, the Court determined that the value of the property to its owner is relevant to determine the damages award for the loss of that property. *See Rutherford v. James,* 33 N.M. 440, 443–44, 270 P. 794, 796 (1928), *overruled on other grounds by Reed v. Styron,* 69 N.M. 262, 265, 365 P.2d 912, 913–14 (1961); *Wilcox v. Butt's Drug Stores, Inc.,* 38 N.M. 502, 504–05, 35 P.2d 978, 979 (1934). The City cites these cases to support its position that "emotional damages may not be awarded for loss of property," but we are unpersuaded that these cases stand for so broad a proposition. *Rutherford* and *Wilcox* do not address emotional damages at all. Instead, those cases

consider the appropriate market value for lost or destroyed property. Indeed, those cases support our conclusion that the market value for lost or destroyed property is the proper measure of damages, even though the market value may be difficult to assess.

{32} Mr. Castillo did not establish physical injury to himself or intentional misconduct on the City's part, and he did not satisfy the elements of bystander recovery. In addition, Plaintiffs do not assert that the home had greater intrinsic value than the appraisals indicated. As a result, we conclude that the $30,000 damage award was sufficient to "provide full and just compensation" and that there was no legal basis in this case on which to award emotional damages. *Hubbard*, 1998–NMCA–058, ¶ 15, 125 N.M. 153, 958 P.2d 111.

### III. CONCLUSION

{33} For the reasons stated in this opinion, we reverse the judgment of $10,000 for Mr. Castillo's emotional distress and affirm the judgment as to the damages to the property.

{34} **IT IS SO ORDERED.**

WE CONCUR: CYNTHIA A. FRY and IRA ROBINSON, Judges.