FILED

05/31/2017

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 22, 2017 Session

**RODNEY AND TAMMY HENDERSON, ET AL. v. THE VANDERBILT UNIVERSITY**

**Appeal from the Circuit Court for Davidson County**
**No. 14C2903          Joseph P. Binkley, Jr., Judge**

**No.  M2016-01876-COA-R9-CV**

BRANDON O. GIBSON, J.,  dissenting

"The law of negligent infliction of emotional distress has been called 'one of the most disparate and confusing areas of tort law.'" *Lane v. Estate of Leggett*, No. M2016-00448-COA-R3-CV, 2017 WL 1176982, at *3 (Tenn. Ct. App. Mar. 29, 2017) (citing *Camper v. Minor*, 915 S.W.2d 437, 440 (Tenn. 1996)).  While this is a statement with which I agree, I must respectfully dissent from the majority opinion.  I certainly do not dispute that the Plaintiffs in this case have suffered extreme emotional distress, nor do I mean to discount their grief and suffering as a result of the death of their daughter, Halle Henderson.

Initially, I take issue with the majority opinion's framing of the issue itself. Plaintiffs' Rule 9 application narrowly frames the issue as follows:  "whether Tennessee law requires a Plaintiff to prove that the Plaintiff knew at the time that the Plaintiff witnessed an injury-producing event that the Defendant was negligent in order to state a claim for NIED."  According to the Rule 9 application, "The question presented is whether Tennessee law requires a Plaintiff making a claim for negligent infliction of emotional distress to have formed a conclusion at the time of the injury-producing event that the Defendant was negligent in order for a negligent infliction of emotional distress claim to be viable as a matter of law."

However, the majority opinion broadens the issue to be:  "whether the trial court erred in granting Vanderbilt's motion for partial summary judgment with regard to Appellants' NIED claims."  As such, the majority opinion, in addition to addressing issues squarely within the issue raised by the Plaintiffs, goes on to address the issue of whether an NIED claim should be disallowed in the medical negligence context.

However, "[t]his court, being a court of errors, cannot review issues not presented and *ruled upon* by the trial court." *Carver Plumbing Co. v. Beck*, No. 01A01-9708-CV-00377, 1998 WL 161112, at *7 (Tenn. Ct. App. Apr. 8, 1998) (quoting *King v. Now Invs., Inc.*, 1987 WL 18891, at *2 (Tenn. Ct. App. Oct. 27, 1987)(emphasis added), *perm. app. denied* (Tenn. Feb. 1, 1988)).

In this case, the trial court held:

The Court finds that the Plaintiffs were not in sufficient proximity to the injury-producing event and did not meaningfully comprehend the injury-producing event. While Plaintiffs observed their child's seizure and cardiac arrest on March 24, 2013, they did <u>not</u> observe or comprehend the alleged acts of negligence (the injury-producing event) that led to the seizure and cardiac arrest. The alleged injury-producing event was Defendant's inadequate medical care over a period of approximately 12 hours leading up to the seizure and cardiac arrest.
….
In this case, the Court finds that Plaintiffs cannot establish sufficient proximity to, and meaningful understanding of, the injury-producing event. Therefore, because Defendant has negated an essential element of Plaintiffs' NIED claims, Defendant is entitled to summary judgment on these claims.

The basis of the trial court's ruling on the Defendant's Motion for Partial Summary Judgment necessarily limits the issues before this Court. The majority opinion expands the scope of review in ways that I believe are impermissible and, frankly, inadvisable. This is not merely a re-statement of the issues; this is an expansion of them.

In addition, I disagree with the legal conclusions drawn by the majority. Negligent infliction of emotional distress claims in Tennessee present a murky area of the law, and one need only examine the Tennessee Supreme Court cases outlining the history of NIED claims to come to such a conclusion. NIED cases, in my opinion, have become a patchwork quilt, full of "arbitrary bright lines." "A Principled Solution for Negligent Infliction of Emotional Distress Claims," 36 Ariz. St. L.J. 805, 807 (Fall 2004). In 1978, the Tennessee Supreme Court noted that "[t]he decisional law in [NIED claims] is presently undergoing substantial change; liability is being expanded." *Shelton v. Russell Pipe & Foundry Co.*, 570 S.W.2d 861, 864 (Tenn. 1978). Thirty years later, the Tennessee Supreme Court noted that "courts have not hesitated to permit the recovery of damages for negligent infliction of emotional distress when justice and fairness require it." *Eskin v. Bartee*, 262 S.W.3d 727, 738 (Tenn. 2008). Over the years, the Tennessee Supreme Court has attempted to integrate certain objective principles into its general

negligence framework for NIED cases. *See Ramsey v. Beavers*, 931 S.W.2d 527, 530 (Tenn. 1996) (explaining that the court "did not necessarily obviate the entire zone of danger test" in *Camper* and that "the principles of the approach [could] be integrated into the general negligence framework"); *see also Eskin*, 262 S.W.3d at 739 n.30 (noting the court's "express desire to fashion objective standards that can be used . . . as integral elements of the cause of action"). While I have a great deal of sympathy for the Plaintiffs in this particular case, I believe the majority's conclusions represent the decades-long continuing trend of expansion of this area of law, with which I cannot agree.

My primary disagreement with the majority's legal conclusions stems from my concern over the "injury-producing event" that the NIED jurisprudence discusses. The trial court specifically held that "[t]he alleged injury-producing event was Defendant's inadequate medical care over a period of approximately 12 hours." Again, Appellants' Rule 9 issue is "whether Tennessee law requires a Plaintiff to prove that the Plaintiff knew at the time that the Plaintiff witnessed an injury-producing event that the Defendant was negligent in order to state a claim for NIED." This issue initially framed by Plaintiffs/Appellants pre-supposes that an "injury-producing event" occurred. In fact, the Rule 9 application stated that "there has always been at least a disputed issue as to whether what the Hendersons witnessed qualifies as an 'injury-producing event' in this case."

What exactly qualifies as an "injury-producing event"? As the majority opinion notes, in *Ramsey v. Beavers*, the Tennessee Supreme Court held as follows:

> Establishing foreseeability, and therefore a duty of care to plaintiff, requires consideration of a number of relevant factors. The plaintiff's physical location at the time of the event or accident and awareness of the accident are essential factors. Obviously, it is more foreseeable that one witnessing or having a sensory observation of the event will suffer effects from it. As has been explained:
>
>> The impact of personally observing the injury-producing event in most, although concededly not all, cases distinguishes the plaintiff's resultant emotional distress from the emotion felt when one learns of the injury or death of a loved one from another, or observes pain and suffering but not the traumatic cause of the injury.
>
> *Thing v. La Chusa*, 48 Cal. 3d 644, 257 Cal. Rptr. 865, 879 (1989). Thus, plaintiff must establish sufficient proximity to the injury-producing event to allow sensory observation by plaintiff.

*Ramsey*, 931 S.W.2d at 531. Clearly, an "injury-producing event" is a prerequisite to an NIED claim. The Tennessee Supreme Court in *Eskin*, though, expanded NIED claims. In *Eskin*, a mother did not witness the injury-producing event – her son was hit by a car at school. However, she arrived on the scene a few minutes later and observed the scene as it was immediately after the incident. The Tennessee Supreme Court held:

> *When a plaintiff did not witness the injury-producing event*, the cause of action for negligent infliction of emotional distress requires proof of the following elements: (1) the actual or apparent death or serious physical injury of another caused by the defendant's negligence, (2) the existence of a close and intimate personal relationship between the plaintiff and the deceased or injured person, (3) the plaintiff's observation of the actual or apparent death or serious physical injury at the scene of the accident before the scene has been materially altered, and (4) the resulting serious or severe emotional injury to the plaintiff caused by the observation of the death or injury. In reaching this conclusion, we do not intend to overrule our holdings in *Camper v. Minor* or *Lourcey v. Estate of Scarlett* that *plaintiffs who witness the injury-producing event* may recover without demonstrating the existence of a close and intimate personal relationship with the deceased or injured person.

*Eskin*, 262 S.W.3d at 739-40. Thus, regardless of whether a particular plaintiff witnesses the injury-producing event or arrives on the scene immediately afterwards, an "injury-producing event" is still required in an NIED claim.

In this case, the undisputed facts for purposes of summary judgment demonstrated the following:

- Halle Henderson was not properly managed for shock when she arrived at the Vanderbilt pediatric intensive care unit on March 23, 2013.

- Health care providers failed to obtain an echocardiogram.

- Halle Henderson's heart rate increased throughout the night on March 23 and into the morning of March 24, 2013.

- Halle Henderson complained of chest pain and had difficulty breathing.

- Between 1:00 a.m. and 1:30 a.m., a nurse started Halle on oxygen, and Mr. Henderson noted to the nurse that Halle's heart rate was climbing. The nurse

stated that "she believed Dr. Veirhoeven [a general pediatrics resident] was going to 'get cardiology involved.'"

- Between 2:00 a.m. and 2:30 a.m., the nurse went out in the hallway and talked to Dr. Veirhoeven, Dr. Veirhoeven came in and asked questions, and the nurse came back and said he was going to contact cardiology.

- Around 3:30 or 4:00 a.m., Halle was sent for a CT scan, and the nurse told Mr. Henderson that cardiology would "be [there] shortly."

- Around 4:00 a.m., Mr. Henderson asked the nurse about the results of the CT scan and whether cardiology was coming. The nurse told Mr. Henderson "[t]hey'll be coming."

- Shortly after, the nurse left the room and talked with Dr. Krishna (a fellow in pediatric cardiology). She then returned to the room and said "cardiology will be here really soon."

- Around 5:00 a.m., Mr. Henderson went out of Halle's room, "furious," and asked where cardiology was.

In addition, Plaintiffs' counsel argued the following before the trial court:

- "the injury-producing event under our expert proof in this case was on March 23 and 24, the first 24 hours of admission leading up to the cardiac arrest"

- "unequivocally our experts say it was treatment or lack of it on the 23rd and the 24th of March that was the injury-producing event that ultimately caused [the child's] death."

- "Our contention – and I think that's the only one really that's subject of any debate, is did the parents see an injury-producing event or did they have a sensory – the real key is did they have a sensory perception of an injury-producing event? And I think clearly that they did for 13 hours, and then seeing the arrest itself."

Herein lies one of my main concerns with this case: can an "injury-producing event" for purposes of a bystander NIED claim consist of inaction lasting for hours on end, or does NIED jurisprudence require the "injury-producing event" to be a sudden, traumatic event? Or must the "injury-producing event" be an identifiable event? The vast majority of NIED cases in Tennessee involve some sudden traumatic event, although "sudden" and "traumatic" are not used as modifiers for the necessary "injury-producing event." *See Thurmon v. Sellers*, 62 S.W.3d 145 (Tenn. Ct. App. 2001); *Shaffer v. Shelby*

5

*County*, No. W2000-02215-COA-R3-CV, 2002 WL 54389 (Tenn. Ct. App. Jan. 11, 2002); *Lourcey v. Estate of Scarlett*, 146 S.W.3d 48 (Tenn. 2004); *Eskin v. Bartee*, 262 S.W.3d 727 (Tenn. 2008). In this case, however, there is no sudden, traumatic event. Instead, there is an ongoing course of conduct (or lack thereof) and, for purposes of the motion for partial summary judgment, a series of events that ultimately led to the death of the child. Is a course of conduct over a period of hours consistent with the Tennessee Supreme Court's choice of the phrase "injury-producing event?" I do not believe it is.

The majority opinion posits that no Tennessee case has ever placed a limitation on what constitutes an injury-producing event. While I do not dispute that the Tennessee Supreme Court has never specifically required a sudden, traumatic event, the cases considered by that court lead me to the conclusion that an identifiable *event* is required to state a claim for NIED. Merriam-Webster's dictionary defines "event" as "something that happens" or an "occurrence."[1] MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 432-33 (11th ed. 2014). Cases from other states indicate that a sudden, traumatic event is required to state a claim for NIED. *See Castillo v. City of Las Vegas*, 195 P.3d 870, 876 (N.M. Ct. App. 2008); *Fernandez v. Walgreen Hastings Co.,* 968 P.2d 774, 777 (N.M. 1998). While Tennessee cases do not explicitly require a sudden, traumatic event, I agree with Vanderbilt that the cases do seek to compensate plaintiffs for the emotional impact of personally observing some injury-producing event, as opposed to the emotional impact of observing pain and suffering of a loved one.

Again, the trial court did not rule on Vanderbilt's alternative argument that NIED claims involving medical negligence should be barred, and I believe the majority opinion's discussion of that argument is outside the purview of this Rule 9 appeal. For the foregoing reasons, I respectfully dissent.

_____
BRANDON O. GIBSON, JUDGE

---

[1]Merriam Webster's dictionary also defines "event" as "the fundamental entity of observed physical reality represented by a point designated by three coordinates of place and one of time in the space-time continuum postulated by the theory of relativity." *Id.* I would therefore argue that an "event" must be a particular point in time – among other examples, the point at which one car strikes a human or another car or one shoots another human.