Jack HIRST, James Hirst, Charles Hirst, Greg Hirst, and Carol Allison, Plaintiffs,

v.

The ELGIN METAL CASKET COMPANY, a Delaware Corporation, Defendant.

No. CV 76–40–GF.

United States District Court, D. Montana, Great Falls Division.

Oct. 20, 1977.

rigid specifications and quality control promised you.

and issued a certificate as follows:

PERMASEAL II      No. 430864
TEST CERTIFICATION

The stamp at right verifies that this casket has passed Elgin's rigid and exacting pressure test. It was electronically activated only when the testing instrument proved that this casket successfully passed the test.      (STAMP)

(TRADEMARK)      ELGIN METAL CASKET COMPANY
A Simmons Company

R. Allen Beck, Moses, Kampfe, Tolliver & Wright, Billings, Mont., for plaintiffs.

John D. Stephenson, Jr., Jardine, Stephenson, Blewett & Weaver, Great Falls, Mont., for defendant.

---

## ORDER GRANTING A NEW TRIAL OR IN THE ALTERNATIVE A REMITTITUR

RUSSELL E. SMITH, Chief Judge.

Defendant's motion for a new trial is granted unless all of the plaintiffs, within 15 days from the filing of this order, consent to the entry of judgment awarding damages to the plaintiffs as follows:

| | |
|---|---|
| Jack Hirst (father) | $ 2,000.00 |
| Charles Hirst (brother) | 1,500.00 |
| Greg Hirst (brother) | 1,000.00 |
| Carol Hirst Allison (sister) | 1,000.00 |
| James Hirst (brother) | 500.00 |

The reasons for this order are these:

Jack Hirst, the father of Clayton Hirst, deceased, bought an Elgin Permaseal II casket from the defendant Elgin Metal Casket Company. Plaintiff was furnished a brochure containing the following statements:

The hidden qualities are more difficult to discern. Elgin Permaseal II Caskets have a *unique* SRP (Sprayed Rigid Polyurethane) application that accomplishes bottom sealing, increases structural strength and rigidity.

.    .    .    .    .

Finally, Elgin Metal Casket Company issues a written warranty with every Elgin Permaseal II Casket. It is Elgin's *bond* that *every* Elgin Casket meets the

Clayton Hirst was buried on March 12, 1975, and was disinterred on or about June 24, 1975. When the casket was opened, it was found to contain water. The body was in generally good condition, but, as a result of the presence of water, some mold appeared on the face of the corpse. The casket had not been mistreated. The court granted, on its own motion, a summary judgment to the effect that there had been a breach of warranty.[1] The case was submitted to the jury on the issue of damages only.

There was no proof of any physical injury or physical, as distinguished from mental, suffering. Defendant urges that there is no authority for awarding damages for a breach of warranty on the sale of an article of personal property, under either the Uniform Commercial Code or at the common law, where the damages are based on mental suffering alone.

The Montana Uniform Commercial Code (R.C.M.1947, § 87A–2–714(3)) does provide that, in a proper case, consequential damages may be awarded for a breach of warranty. The Code (R.C.M.1947, § 87A–2–715(2)) defines consequential damages as:

---

1. The casket was "goods" within the meaning of the Uniform Commercial Code, R.C.M.1947, § 87A–2–105(1). The documents which were the basis of the bargain tell the buyer that the casket is a Permaseal; that the bottom has been uniquely sprayed to accomplish a bottom sealing; and that the casket has passed rigid tests for air and water tightness. These promises and descriptions created express warranties under R.C.M.1947, § 87A–2–313(1). In the court's opinion the manufacturer warranted that the casket would not leak within three months. It did. It should be noted that the remedy afforded by the Certificate of Warranty does not purport to be exclusive.

(a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and

(b) injury to person or property proximately resulting from any breach of warranty.

Rare indeed are the contracts which could give rise to a cause of action for liability based on mental suffering alone, but in my opinion a contract for the sale of a casket is one of those rare contracts. A casket manufacturer who markets a Permaseal casket must intend to market it to those people who have a reverence for the dead body—a wish to preserve the body and to preserve the image of the deceased. A casket manufacturer who sells as leakproof a casket that leaks has failed to meet the very need that formed the incentive to buy. To many this need may not seem very real or substantial, but he who seeks to exploit that need in merchandising is in no position to say so. In cases involving services furnished in connection with deaths and funerals, the courts, recognizing the special nature of the situation, have created special exceptions[2] to the ordinary rules disallowing damages for mental suffering only.[3]

Liability may likewise be found under R.C.M.1947, § 87A–2–715(2)(b). The word "person" embraces the mind as well as the body, and whether in a given case such things as feelings of grief, anxiety, and distress may be distinguished from an actual breakdown of the physical nervous system,[4] it does no violence to the word "person" to hold that that which brings on grief, anxiety, or depression does a damage to the person.

Defendant also urges that, in any event, only Jack Hirst, who entered into the contract, can recover on the warranty. However, R.C.M.1947, § 87A–2–318 provides:

A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section.

Here the siblings were members of the family and reasonably might be expected to be affected by the funeral arrangements. For these reasons, I conclude that the plaintiffs were entitled to damages.

▄ Had the liability in this case been submitted to the jury, I would set aside the verdict because, from the amount of the damages awarded, I would conclude that the verdict had been reached under the influence of passion and prejudice. Prior to the interment, the body of Clayton Hirst had been autopsied at the insistence of the Hirst family. At the time of the interment, it was contemplated that the body might be exhumed for the purpose of a second autopsy. There was no need for any member of the family to assist in the exhumation. Jack Hirst, the father, and Charles Hirst, a brother, deliberately exposed themselves to the sight of the body. There was no need for Jack and Charles to relate to the others a detailed description of the body lying in a casket full of water. The desire expressed by some of the plaintiffs to visualize the body of Clayton resting peacefully in the casket is hardly compatible with their unanimous decision to order the second autopsy, a procedure involving further mutilation of the body. It appears to me that much of the injury was self-inflicted. Rather than grant a new trial on the damage issue un-

2. *Meyer v. Nottger*, 241 N.W.2d 911 (Iowa 1976); *Clark v. Smith*, 494 S.W.2d 192 (Tex. Civ.App.1973); *Pat H. Foley & Co. v. Wyatt*, 442 S.W.2d 904 (Tex.Civ.App.1969); *Weingast v. State*, 44 Misc.2d 824, 254 N.Y.S.2d 952 (1964); *Baumann v. White*, Sup., 234 N.Y.S.2d 272 (1962); *Lamm v. Shingleton*, 231 N.C. 10, 55 S.E.2d 810 (1949).

3. See Annot., 88 A.L.R.2d 1367 (1963).

4. *See Cashin v. Northern Pacific Ry.*, 96 Mont. 92, 28 P.2d 862 (1934).

conditionally, I have ordered a new trial only in the event that plaintiffs do not accept the awards herein made.[5]

In view of the law questions involved here, I believe that an immediate appeal would be in the interests of justice, and I will, at the request of any party, issue an interlocutory certificate (28 U.S.C. § 1292(b)) if such is necessary to effectuate an appeal.

---

**5.** The reduced awards are consistent with awards in comparable cases in other jurisdictions. *E. g., Clark v. Smith*, 494 S.W.2d 192 (Tex.Civ.App.1973) (award for negligent embalming reduced from $6,000.00 to $2,500.00 per child); *French v. Ochsner Clinic*, 200 So.2d 371 (La.App.1967) (award for unauthorized autopsy increased to $1,500.00); *Sanford v. Ware*, 191 Va. 43, 160 S.E.2d 10 (Va.1950) (award of $1,000.00 for gross negligence in handling the body).