Chanselor BELL, Plaintiff,

v.

**BOARD OF EDUCATION OF the ALBUQUERQUE PUBLIC SCHOOLS, Defendant.**

No. CIV 06–1137 JB/ACT.

United States District Court, D. New Mexico.

Aug. 29, 2008.

Tara Ford, Pegasus Legal Services, Gail S. Stewart, Albuquerque, NM, for Plaintiff.

Michael L. Carrico, Samantha Adams, Modrall Sperling Roehl Harris & Sisk PA, Albuquerque, NM, for Defendant.

### MEMORANDUM OPINION AND ORDER

JAMES O. BROWNING, District Judge.

**THIS MATTER** comes before the Court on APS' Motion to Dismiss, or in the Alternative for Summary Judgment on Plaintiffs' Claims for Damages, filed July 18, 2006 (Doc. 82). The Court held a hearing on July 28, 2008. The primary issues are: (i) whether damages for emotional distress, are available under Section 504 of the Rehabilitation Act; and (ii) whether damages for emotional distress are available under Title VI for Bell. The Court has reviewed: (i) J. Lave, M. Sklar, and A. van der Zee, *A Right Without a Remedy: An Analysis of the Decisions by the District Court and Eleventh Circuit in Sheeley v. MRI Radiology Network, P.A., and the Implication for Disabled Americans' Ability to Receive Emotional Damages Under the Rehabilitation Act and the Americans With Disabilities Act,* 4 Seton Hall Circuit Rev. 1 (2007)("Lave, Sklar, & van der Zee article"); (ii) *Sheely v. MRI Radiology Network, P.A.,* 505 F.3d 1173 (11th Cir. 2007); (iii) the Honorable M. Christina Armijo, United States District Judge's Memorandum Opinion and Order in *N.T. v. Espanola Public Schools,* No. CIV 04–415 MCA/DJS, 2005 WL 6168483, filed June 21, 2005 (Doc. 55); and (iv) the Court's Memorandum Opinion and Order in *Khan v. Albuquerque Public Schools,* No. CIV–03–118 JB/RLP, filed December 31, 2003 (Doc. 39).[1] For the reasons stated at the hearing, and for reasons stated herein consistent with those already stated, the Court will grant APS' motion for summary judgment on Bell's claims for damages under Section 504 and Title VI.

The Court need not and will not repeat its analysis in *Khan v. Albuquerque Public Schools,* but will incorporate its discussion of damages for emotional distress therein by reference. There can be little dispute that damages for emotional distress are not generally available in a contract case. The authors of the Lave, Sklar & van der Zee article—who filed an amicus brief in *Sheely v. MRI Radiology Network, P.A.,* advocate in their article for recognition of emotional damages in Section 504 cases, and are critical of the Court's decision in the *Khan v. Albuquer-*

---

1. Because the opinion in *Khan v. Albuquerque Public Schools* is presently unpublished, the Court will attach it to this opinion as Exhibit A.

*que Public Schools*—repeatedly concede that emotional damages are generally unavailable for contract claims. *See* Lave, Sklar & van der Zee article at 9 ("[T]he district court is correct that damages for emotional or mental distress are generally not available for breach of contract."). The caselaw and commentators support this observation. The *Restatement (Second) of Contracts,* in section 353, adopts the general rule prohibiting recovery of non-economic damages in contract cases unless the breach also caused bodily disturbance or the contract of the breach "is of such a kind that serious emotional disturbance was a particularly likely result." *Restatement (Second) of Contracts* § 353 (1981).

The courts have developed exceptions to the general rule. Some courts have looked to the nature of the contract and made exceptions where breach was particularly likely to result in serious emotional disturbance. "Other courts have looked to the nature of the breach and allowed damages for emotional disturbance on the ground that the breach of contract was reprehensible." *Farnsworth on Contracts* § 12.17 at 292–93 (3d ed. 2004). The question is whether the Supreme Court of the United States in *Barnes v. Gorman,* 536 U.S. 181, 122 S.Ct. 2097, 153 L.Ed.2d 230 (2002), when it stated that it had applied "the contract-law analogy" to define the scope of the available damages, *id.* at 187, 122 S.Ct. 2097, meant to adopt any exception that any court had ever adopted, generally recognized exceptions, or just the general rule, not the exceptions.

■ The Supreme Court in *Barnes v. Gorman* stated that "all contract-law rules" may not apply to a Title VI relationship. 536 U.S. at 186, 122 S.Ct. 2097 (emphasis in original). Given the way that the Supreme Court dealt with punitive damages—creating a general rule despite some cases that recognized punitive dam-

ages in contract cases—the Court is inclined to think that the contract-law analogy is most useful in creating an easily applied general rule—no damages for emotional distress—rather than pulling the entire body of contract law, including every case, wherever found, that has discussed contracts and damages for emotional distress together, into the analysis.

Moreover, the contract between the federal government and the State of New Mexico does not apply merely to high-school basketball players, but to a vast array of students. In *Guardians Association v. Civil Service Commission of New York,* 463 U.S. 582, 103 S.Ct. 3221, 77 L.Ed.2d 866 (1983), the Supreme Court emphasized the consensual nature of the contract.

> We have also indicated that make whole remedies are not ordinarily appropriate in private actions seeking relief for violations of statutes passed by Congress pursuant to its power under the Spending Clause to place conditions on the grant of federal funds.... This is because the receipt of federal funds under typical Spending Clause legislation is a consensual matter: the State or other grantee weighs the benefits and burdens before accepting the funds and agreeing to comply with the conditions attached to their receipt.

463 U.S. at 596, 103 S.Ct. 3221. The Court doubts that states contemplate, when entering into the funding arrangement with the federal government, that damages for emotional distress will generally not be available, but are available in certain situations. The more likely expectation is that emotional damages are available when there is a breach or they are not available at all, and that the rule in each case will not turn on exceptions to the general rule.

Even if, however, the Court were to conclude that some of the major, universal-

ly recognized exceptions should be pulled into the federal analysis, the major exceptions do not apply to this case. "Recovery for emotional disturbance will be excluded unless ... the breach is of such a kind that serious emotional disturbance was a particularly likely result." *Restatement (Second) of Contracts* § 353, (1981). "[N]umerous cases allowing the recovery of emotional distress damages for breach of contract exists, invariably dealing with what might be called peculiarly sensitive subject matter, or noncommercial undertakings or both." *Williston on Contracts* § 64.7, at 74–75 (4th ed. 2002). While the Court does not minimize the importance of making his high school basketball team during his senior year to a young man who may have the ability to play Division I basketball, the Court does not think this disappointment is the serious emotional disturbance or peculiarly sensitive subject matter that the case law has generally had in mind.

There are, of course, cases that go further and find damages for emotional distress whenever they would reasonably or foreseeably result from the breach. The Court is reluctant to pull this exception into the federal analysis, because it tends to blur the distinction between tort damages and contract-law damages. The Court believes that, if it adopts this exception, the exception could easily swallow the general rule and undercut the Supreme Court's contract-law analogy, which the Court believes was intended to assist the Court in developing a general rule applicable in all federal cases. In the end, the Court is concerned that recognition of emotional damages is not true and faithful to the Supreme Court's analysis and language.

The Lave, Sklar & van der Zee article is particularly concerned that the recovery of emotional damages is necessary to ensure optimal deterrence. There are at least three responses. First, this argument is a policy concern that should be addressed to Congress, not to the inferior federal courts. If Congress wants the courts to award damages for emotional distress, it can so legislate. A lower court must, however, be faithful to the Supreme Court's analysis and language, setting aside its views of what might be optimal.

■ Moreover, Congress certainly has not thought it necessary to allow damages for violations of the IDEA, which, being in the educational context, may be more similar to Section 504 cases in the educational context, than contracts for funeral services. There is no claim for money damages under the IDEA. See, *e.g., Diaz–Fonseca v. Commonwealth of Puerto Rico,* 451 F.3d 13, 28 (1st Cir.2006)("It is black letter law that punitive damages—indeed money damages of any sort—are not available in a private suit under the IDEA"); *Ortega v. Bibb County School District,* 397 F.3d 1321, 1325 (11th Cir.2005)(stating that tort-like damages are not available under the IDEA); *Polera v. Bd. of Educ. of Newburgh Enlarged City Dist.,* 288 F.3d 478, 481 (2d Cir.2002)(noting that the purpose of the IDEA is to provide educational services, not compensation for personal injury; that the availability of damages would undercut the IDEA's carefully structured procedure for administrative remedies; and that monetary damages are not available under the IDEA); *Crocker v. Tennessee Secondary Sch. Athletic Ass'n,* 980 F.2d 382, 386–87 (6th Cir. 1992)("We do not find case authority interpreting [the predecessor to the IDEA] to allow an award of general damages for emotional injury or injury to a dignitary interest."). Second, such damages should not be available unless Congress specifically puts the funding recipient on notice that it may be subject to such damages. *See*

*Barnes v. Gorman,* 536 U.S. at 187, 122 S.Ct. 2097.

Third, this case indicates, if anything, that the recognition of emotional damages is not necessary to create a proper incentive to sue. Bell has indicated that, even if the Court grants APS' motion, it will proceed to a week-long trial next month. Furthermore, in many cases, there may be compensatory damages that survive the contract-law analogy. In this case, there may be equitable remedies. The statute provides for attorneys fees. It does not appear that the non-existence of damages for emotional distress are the death knell of suits under Section 504.

The Lave, Sklar & van der Zee article also criticizes the Court because it likened emotional damages to punitive damages. Any trial lawyer knows, however, that punitive damages, pain-and-suffering, and emotional-distress damages are the wild cards at trial. "Damages for emotional disturbance [in breach-of-contract cases] are not ordinarily allowed. Even if they are foreseeable, they are often particularly difficult to establish and to measure." *Restatement (Second) of Contracts* § 353, cmt. a (1981). The indeterminate nature of these damages, much like the case of punitive damages, is one of the prevailing characteristics that renders their award in breach-of-contract cases extraordinary. *See Farnsworth On Contracts* § 12.8, at 193–94 (3d ed. 2004).

In *N.T. v. Espanola Public Schools,* there is no indication that the parties brought this Court's decision in *Khan v. Albuquerque Public Schools* or other district court decisions rejecting emotional distress damages to Judge Armijo's attention. In any case, Judge Armijo concluded that the available remedies include damages for specific and genuine instances of emotional mental anguish or emotional distress that discrimination or retaliation causes. *See* Memorandum Opinion and Order at 27–28. She did not accept the argument that the contract-law analogies which the Supreme Court articulated in *Barnes v. Gorman* foreclosed such remedies. *See N.T. v. Espanola Public Schools,* Memorandum Opinion and Order at 28. She concluded that the more appropriate contract-law analogies to apply in her case are those pertaining to contracts for personal well-being. *See id.*

Without mentioning the general rule that damages for emotional distress are generally not available in contract cases, Judge Armijo relied on an exception that, when the contractual duty

> "is so coupled with matters of mental concern or solicitude, or with the sensibilities of the party to whom the duty is owed, that a breach of that duty will necessarily or reasonably result in mental anguish, and it is known from the nature of the contract that such suffering will from its breach, compensatory damages therefor may be recovered."

*Flores v. Baca,* 117 N.M. 306, 311, 871 P.2d 962, 967 (1994)(quoting *Lamm v. Shingleton,* 231 N.C. 10, 55 S.E.2d 810, 813 (1949)). Judge Armijo stated that, in the context of public education, the purpose of the anti-discrimination statutes is not limited to providing disabled students with services, but to protect students from the harm to their personal well-being caused by being singled out for unfair treatment or in retaliation for protected activities. *See N.T. v. Espanola Public Schools,* Memorandum Opinion and Order at 28. In this respect, she believed that the pertinent provisions of the ADA and the Rehabilitation Act are more analogous to a contract for personal well-being than to a commercial contract, and the students are the intended beneficiaries of such provisions. *See N.T. v. Espanola Public Schools,* Memorandum Opinion and Order at 28–29. Judge Armijo stated that subjecting the school to liability for the loss of

that well-being does not offend the Spending Clause principles that the Supreme Court articulated in *Barnes v. Gorman.*

While the Court agrees with Judge Armijo that Congress is concerned with the well-being of the students, the Court is not convinced that this concern overrides the Supreme Court's concerns in *Barnes v. Gorman.* The Supreme Court was particularly concerned that indeterminate damages undermines the general rule that a plaintiff must prove contract damages to a reasonable certainty. *See* 536 U.S. at 188, 122 S.Ct. 2097 ("Not only is it doubtful that funding recipients would have agreed to exposure to such unorthodox and indeterminate liability; it is doubtful whether they would even have accepted the funding if punitive damages liability was a required condition."). The Supreme Court's emphasis on this policy reason in *Barnes v. Gorman* reflects its belief that it is unreasonable to assume a funding recipient would have expected, accepted, or acknowledged the possibility of, and exposure to, a punitive damages award (or multiple awards in multiple cases) that has no ascertainable limit. *See id.* at 188, 122 S.Ct. 2097. Such an interpretation, the Supreme Court suggested, would undermine the basic principle of certainty that is the validating foundation for the law of contract itself. *See id.* at 187–88, 122 S.Ct. 2097.

■ For the reasons already stated, the Court believes that it is more sound to adopt the general rule against damages for emotional distress rather than on a case-by-case analysis determining whether an exception applies. The Supreme Court indicated that "*all* contract law rules" may not apply to a Title VI relationship, and the Court does not believe that it should adopt exceptions or this particular exception. First, the exception is difficult to apply consistently, as New Mexico law alone suggests. *See Woodmen Accident &*

*Life Ins. Co. v. Bryant,* 784 F.2d 1052, 1056–57 (10th Cir.1986)(New Mexico case)(stating that emotional distress damages are unavailable for breach of insurance contract under New Mexico law); *Akutagawa v. Laflin, Pick & Heer, P.A.,* 2005–NMCA–132, ¶ 21, 138 N.M. 774, 126 P.3d 1138, 1144 (rejecting recovery of emotional distress damages in a legal malpractice claim and noting that emotional distress damages in contract actions are recoverable in the limited situation where the specialized nature of the contract naturally contemplated that reasonable care would be taken to avoid the infliction of severe emotional distress).

Second, even if Judge Armijo is correct that Section 504 contractual relationships can be fairly analogized to a contract for personal services, such a construction does not necessarily lead to the conclusion that emotional-distress damages are recoverable in Section 504 cases. Spending Clause legislation generally has as its object the delivery of services to third-party beneficiaries. Congress designed Section 504 to ensure meaningful access to the programs that a recipient of federal funding offers. *See Alexander v. Choate,* 469 U.S. 287, 301, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985). Title VI and Section 504 place obligations on recipients of federal funds to refrain from denying program benefits or discriminating on the basis of race and disability, respectively. *See* 42 U.S.C. § 2000d; 29 U.S.C. § 794a. There is nothing about a contractual relationship involving the delivery of educational services—or most other governmental services—that puts them within the realm of the very specific personal service contracts for which courts have allowed emotional distress damages. In contrast, in *Flores v. Baca,* the Supreme Court of New Mexico noted that grief plays an expected component, and is ordinarily associated with, funeral services. *See* 117 N.M. at 313–14, 871 P.2d at 969; *Restatement (Second) of Contracts* § 353

("Recovery for emotional disturbance unless ... the contract or the breach is of such kind that serious emotional disturbance was a *particularly* likely result.")(emphasis added). There is nothing incongruous about constraining damages recoverable for alleged violations to the value of the services that have allegedly been denied.

■ It is true that the Supreme Court has recognized that, where legal rights have been invaded and a cause of action is available, generally a federal court may use any available remedy to afford full relief. The Supreme Court has also recognized, however, that this presumption will yield to a contrary congressional intent or statutory purposes. The Supreme Court has used this limitation in the Spending Clause context. The Supreme Court has recognized that, with respect to legislation like Title VI, enacted pursuant to Congress' Spending–Clause power, the presumption must yield to some extent to accommodate the fact that remedies for violations of such legislation are proper only if funding recipients have fair notice that they may be subject to them. In articulating its concern, the Supreme Court has found it useful to analogize Spending legislation to a contract in which the federal government provides money to recipients in exchange for their promise not to discriminate against third parties. Thus, the Court must deal sensitively with the more specific limitation discussed in *Barnes v. Gorman* than the general principles that the Supreme Court has articulated in other contexts.

■ Finally, the Court has reviewed Bell's evidence for compensatory damages that might survive the *Barnes v. Gorman* analysis: lost educational opportunity, lost wages, and lost earning capacity. The Court need not decide whether *Barnes v.*

*Gorman* applies to lost future wage claims or lost earning capacity claims. Rather, based on the undisputed facts, the Court does not believe that Bell has presented sufficient evidence showing that he is entitled to other compensatory damages. Factually, Bell has not met the threshold to establish recoverable damages. Vague complaints about loss of self esteem are insufficient to support damage claims for lost wages, lost educational opportunity, and lost earning capacity. Indeed, at the pretrial conference, Bell's counsel effectively conceded that she did not have evidence to secure other compensatory damages that might survive a contract-law analysis:

> STEWART: Your Honor, this is Gail Stewart, if I may speak to this? I don't want to give away anything the Court is trying to give us, but the problem here is that I don't have, we have not really, other than pleading for certain other kinds of damages—for instance lost wages—we do not have a proof to be able to prove that in the context of this claim that is remaining.... So I don't know that, I certainly can't remember everything that Mr. Carrico wrote, but I think if you compare you're going to see that we were arguing for emotional distress damages, because we thought that we had the evidence for emotional distress damages.... In a situation for a student, that is almost impossible, and I don't, I'm not going to waste anybody's time trying to tell the Court that we think we know how we could prove ecomomic damages or compensatory damages in the context of this claim. We thought the strongest damages, under the allowable jury instructions, would be emotional distress damages.

*See* Federal Digital Tape Recorder ("FTR") at 9:07:13–9:08:34 (taken August 28, 2008)(Stewart).[2] Accordingly, the

---

**2.** The hearing was recorded digitally rather than by written transcript. The Court is,

Court will grant summary judgment on the other damages that Bell seeks in this case.

**IT IS ORDERED** that APS' Motion to Dismiss, or in the Alternative for Summary Judgment on Plaintiffs' Claims for Damages is granted.

### EXHIBIT A

### IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW MEXICO

MUSHTAQ and ARIF KHAN, for themselves and as parents and next friend of ABDUL QAYYUM KHAN, a minor child, Plaintiff,

vs.

ALBUQUERQUE PUBLIC SCHOOLS, THE ALBUQUERQUE PUBLIC SCHOOLS BOARD OF EDUCATION and BRAD WINTER, in his individual and official capacity, Defendants.

No. CIV03–0118 JB/RLP

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Albuquerque Public Schools Board of Education's ("APS") Motion to Dismiss Claims for Punitive Damages and Emotional Distress Damages, filed May 20, 2003 (Doc. 14). The primary issue is whether Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12132 and Section 504 of the Rehabilitation of 1973 ("section 504"), 29 U.S.C. § 794(a) allow a plaintiff to recover damages for emotional distress. Because the Court determines that the Supreme Court of the United States' decision in *Barnes v. Gorman,* 536 U.S. 181, 185, 122 S.Ct. 2097, 153 L.Ed.2d 230 (2002), is instructive if not controlling on all issues herein, the Court will grant APS' motion to dismiss.

therefore, unable to provide pinpoint transcript citations to the dialogue at the hearing.

### BACKGROUND

The Plaintiffs' Complaint asserts claims pursuant to the ADA and Section 504. The Complaint includes allegations of emotional distress injuries, *see* Complaint ¶ 34, at 8, as well as a request for punitive damages, see *id.* ¶ 2, at 9. APS moves the Court, pursuant to rule 12(c), to dismiss the Plaintiffs' claims for punitive damages and emotional distress damages.

### LEGAL ANALYSIS

The ADA and section 504 prohibit discrimination on the basis of a disability. The ADA prohibits such discrimination by a public entity. Section 504 prohibits discrimination by a recipient of federal funds.

The remedies for violations of these statutes are those found in Title VI of the Civil Rights Act of 1964—legislation that prohibits racial discrimination in federally funded programming. *See, e.g., Barnes v. Gorman,* 536 U.S. 181, 185, 122 S.Ct. 2097, 153 L.Ed.2d 230 (2002); *Alexander v. Sandoval,* 532 U.S. 275, 280, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001). Because Title VI invokes Congress' power under the Spending Clause, the Supreme Court of the United States has instructed that the relationship between Congress and federal funding recipients is essentially contractual. *See, e.g., Davis v. Monroe County Bd. of Ed.,* 526 U.S. 629, 640, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999)(interpreting Title IX); *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 286, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998)(same). Congress grants monies to eligible recipients conditioned on the recipients' promises to conduct, or refrain from conducting, themselves in a manner that comports with Congressional objectives.

The Court instead cites to the record meter.

Because of this relationship, the Supreme Court has not only "applied the contract-law analogy in cases defining the scope of conduct for which funding recipients may be held liable for money damages," but has also found it appropriate to use this analogy to define the scope of the available damages themselves. *Barnes v. Gorman*, 536 U.S. at 186–87, 122 S.Ct. 2097. Accordingly, contract principles govern the remedies available against recipients of federal funding. *See id.* at 187, 122 S.Ct. 2097. While "*all* contract law rules" may not apply to a Title VI relationship, the Supreme Court has said they apply to questions of damages. *Id.* at 186, 122 S.Ct. 2097 (emphasis in original). Contract law principles instruct that compensatory damages and injunctions are the only traditional forms of relief "available in suits for breach of contract." *Id. See* Restatement (Second) of Contracts § 357, at 163 (Availability of Specific Performance and Injunction); 3 Williston on Contracts § 1445–1450 (1920).

## I. THE 2002 SUPREME COURT DECISION IN *BARNES V. GORMAN* INSTRUCTS THAT INDETERMINATE DAMAGES, SUCH AS PUNITIVE DAMAGES, ARE INAPPROPRIATE REMEDIES IN CASES ARISING FROM SPENDING CLAUSE *LEGISLATION.*

The Supreme Court case of *Barnes v. Gorman*, addressing the issues of punitive damages, identified the analytical model for questions involving damages of an indeterminate magnitude. In 2002, the *Barnes v. Gorman* court, applying contract principles, deemed an award for punitive damages an inappropriate form of relief in a suit based upon the ADA, the Rehabilitation Act, and Title VI. *See Barnes v. Gorman*, 536 U.S. at 189, 122 S.Ct. 2097 (holding that "punitive damages may not be awarded ... in suits brought under § 202

of the ADA and § 504 of the Rehabilitation Act."). Relying on traditional contract law principles, the Court instructed that a federal funding recipient is liable only for those damages for which the recipient had notice—that is, the recipient is liable only for damages which were within the parties' contemplation at the time they entered the funding arrangement. *See id.* The Court held that, because it could not deem the recipients of federal funds to have entered into a contractual relationship that would subject them to punitive damages, punitive damages are unavailable under Title VI. *See id.* at 188, 122 S.Ct. 2097.

Because Congress has been silent with regard to remedies in this area, the Supreme Court has increasingly considered traditional contract law remedies as appropriate in cases arising from Spending Clause legislation. *See id.* at 187–88, 122 S.Ct. 2097. Punitive damages are generally not available in suits for breach of contract. *See id.* at 187, 122 S.Ct. 2097; Restatement (Second) of Contracts § 355, at 154; 3 Farnsworth On Contracts § 12.8, at 192 (2d ed. 1998). The strong policy reasons underlying this rule include: (i) such awards discourage efficient breach, which our judicial system encourages; (ii) the law intends punitive damages to punish the wrongdoer while contract law is essentially "a law of strict liability, [with an] accompanying system of remedies [that] operates without regard to fault," 3 Farnsworth, supra § 12.8, 12.17, at 192–93, 284–90; and (iii) admitting proof of such indeterminate damages undermines the general rule that a plaintiff must prove contract damages to a reasonable certainty. The Supreme Court's particular emphasis on this last policy reason in *Barnes v. Gorman* reflects its belief that it is unreasonable to assume a funding recipient would have expected, accepted, or acknowledged the possibility of, and exposure to, a punitive damages

award (or multiple awards in multiple cases) that has no ascertainable limit. *See Barnes v. Gorman,* 536 U.S. at 188, 122 S.Ct. 2097. · Such an interpretation, suggests the Supreme Court, would undermine the basic principle of certainty that is the validating foundation for the law of contract itself. *See id.* at 187–88, 122 S.Ct. 2097.

After establishing that the ADA, the Rehabilitation Act, and Title VI do not contain an express provision for punitive damages, the Supreme Court in *Barnes v. Gorman* examined whether, despite the contractual nature of the Title VI funding relationship, implied punitive damages exposure might nonetheless exist. *See Barnes v. Gorman,* 536 U.S. at 186–88, 122 S.Ct. 2097. Because the parties' relationship in this scenario is inherently different from the typical contract affiliation, the Court has instructed that "community standards of fairness" govern the existence of implied punitive damages exposure. *Id.* at 188, 122 S.Ct. 2097. These "community standards of fairness" do not support the assumption that a funding recipient would willingly expose itself to the unexpected and unlimited liability that possible punitive damages awards implicate. *Id.*

It is more likely, instead, that a funding recipient would refuse such monies if it weighed the funding benefit against the burden that a damages award could potentially consume not only all of the funding itself, but additional non-federal monies, as well. *See id.*; *Pennhurst State Sch. & Hosp. v. Halderman,* 451 U.S. at 29–30, 30 n. 23, 101 S.Ct. 1531; *id.* at 53–55, 101 S.Ct. 1531 (White, J., dissenting in part). Emphasizing the certainty principle of contract law, the Supreme Court suggested that punitive damages' indeterminate nature would alone be a cost-prohibitive risk that might either compromise an agency's ability to conduct federally funded pro-

gramming or entirely preclude the implementation of a program that is entirely dependent upon federal monies. *See Barnes v. Gorman,* 536 U.S. at 187–88, 122 S.Ct. 2097.

The Supreme Court's decision in 1983 in *Guardians Ass'n. v. Civil Serv. Comm'n of City of New York,* 463 U.S. 582, 103 S.Ct. 3221, 77 L.Ed.2d 866 (1983), bolsters this conclusion. In *Guardians Ass'n. v. Civil Serv. Comm'n of City of New York,* the Supreme Court held that a funding recipient may withdraw from a Spending Clause program rather than "assume unanticipated burdens" inherent in remedying noncompliant conduct. *See* 463 U.S. at 597, 103 S.Ct. 3221. The Supreme Court did not read into Spending Clause legislation the assumption that a recipient can never refuse federal monies rather than comply with Congressional conditions.

The *Guardians Ass'n. v. Civil Serv. Comm'n of City of New York* case stands for the proposition that a funding recipient has a right to terminate the relationship. *See id.* This right embodies the contractual nature of this relationship, and thus the Court appropriately applies traditional contract rules in these cases. After analyzing both traditional contract doctrine and evolving principles of Spending Clause legislation cases, the Supreme Court in *Barnes v. Gorman* concluded that punitive damages are not recoverable in a claim under section 504 or Title II of the ADA because of their extraordinary and unexpected nature. *See Barnes v. Gorman,* 536 U.S. at 188, 122 S.Ct. 2097.

The Plaintiffs, based on the controlling federal case law on the ADA and section 504, do not oppose the Defendants' motion to dismiss their claims for punitive damages. While the Plaintiffs criticize the Supreme Court's reasoning in *Barnes v. Gorman* as convoluted and a distortion of congressional intent, they acknowledge

that it is presently the law of the land. The Plaintiffs note that, because of the Supreme Court's very broad ruling, they are not able to distinguish their case and argue for an exception. The Plaintiffs correctly note that, if the law is to change, Congress will need to act, in the future, to add the remedy of punitive damages to persons who suffer intentional discrimination on the basis of disability in contravention of statutory law.

## II. EMOTIONAL DISTRESS DAMAGES ARE NOT AN APPROPRIATE FORM OF RELIEF BECAUSE NEITHER TRADITIONAL CONTRACT LAW DOCTRINE NOR EVOLVING PRINCIPLES OF SPENDING CLAUSE LEGISLATION AS *ARTICULATED IN THE BARNES V. GORMAN CASE* SUPPORT THEM.

The Plaintiffs oppose the Defendants' motion to dismiss their claims for emotional distress damages. In *Barnes v. Gorman*, the Supreme Court specifically addressed punitive damages. The Plaintiffs contend that the Defendants are seeking to expand *Barnes v. Gorman* by arguing it opens the door for elimination of the compensatory damage claim of damages for emotional distress under the ADA and section 504.

The Plaintiffs contend that the Court's opinion, as the two separate concurring opinions suggest, do not provide the platform for this leap. The concurrence by Justice Souter, in which Justice O'Connor joined, states: "I realize, however, and read the Court's opinion as acknowledging, that the contract-law analogy may fail to give such helpfully clear answers to other questions that may be raised by actions for private recovery under Spending Clause legislation, such as the proper measure of compensatory damages." 536 U.S. at 191,

122 S.Ct. 2097. The opinion by Justice Stevens, in which Justice Ginsburg and Justice Breyer joined, concurring in the Court's judgment, reinforces the proper confines of the Court's opinion: "The Court fortunately does cabin the potential reach of today's decision by stating that '[w]e do not imply, for example, that suits under Spending Clause legislation are suits in contract, or that contract-law principles apply to all issues that they raise[.]'" *Id.* at 193 n. 3, 122 S.Ct. 2097.

The Court believes that the Plaintiffs go too far in arguing that the *Barnes v. Gorman* decision provides no support for elimination of emotional distress damages from compensatory damages available for intentional discrimination under the ADA and under section 504. While the Court cannot say that *Barnes v. Gorman*'s holding decides the issue presented here, the Court believes the Supreme Court's analysis applies equally to damages for emotional distress, which, like punitive damages, generally are not available in an action for breach of contract. This Court must analyze a question about the scope of appropriate damages under the umbrella of both traditional contract doctrine and evolving principles of law governing these special contract-like cases.

There is one decision since *Barnes v. Gorman* that supports the view that emotional damages are not available; there are also decisions before *Barnes v. Gorman* that support such a position.

### A. THE *BARNES V. GORMAN* ANALYSIS APPLIES TO DAMAGES FOR EMOTIONAL DISTRESS.

The Plaintiffs contend that the *Barnes v. Gorman* analysis continues to support an award of full compensatory damages, including emotional distress damages in the category of compensatory damages. This

argument, however, presumes that "compensatory damages" necessarily encompasses emotional distress damages.

The Supreme Court in *Barnes v. Gorman* emphasized that its decision precluding punitive damages for claims under the Rehabilitation Act rested on its determination that contract law principles guide the determination for what damages are available. *See Barnes v. Gorman,* 536 U.S. at 186, 122 S.Ct. 2097. The Supreme Court also clarified that, while compensatory damages are available in Rehabilitation Act cases, it defines that term as those damages reasonably necessary to place the complainant in the position he or she would have been in had the violation not occurred. *See id.* at 189, 122 S.Ct. 2097.

The United States District Court for the Middle District of Florida, in an opinion after the *Barnes v. Gorman* decision, considered whether emotional distress damages should be available under Title VI taking into account the Supreme Court's guidance. *See Witbeck v. Embry–Riddle Aeronautical University,* 269 F.Supp.2d 1338 (M.D.Fla.2003). The district court determined that the Supreme Court's limitation of damages to "compensatory damages" restricts the available damages to actual compensation for pecuniary damages. *See id.* at 1340 ("His damages are limited to compensatory damages such as expenses and attorney's fees.").

This Court agrees with the district court in Florida's characterization of the Supreme Court's guidance. In *Barnes v. Gorman* the Supreme Court of the United States ruled that the only damages available under Title VI are compensatory damages. Thus, the Supreme Court's ruling and analysis prohibiting punitive damages also applies to emotional distress damages and such damages are not available under Title VI.

## B. TRADITIONAL CONTRACT LAW DOCTRINE DOES NOT ALLOW DAMAGES FOR EMOTIONAL DISTRESS UNLESS THE PARTIES CONTEMPLATED THESE DAMAGES AT THE TIME THEY ENTERED THE CONTRACT.

Emotional distress damages, like punitive damages, are generally unavailable in actions based on contracts. Traditional contract law doctrine does not favor awards for emotional distress damages. *See* 3 Farnsworth, *supra* § 12.17, at 288. "Damages for emotional disturbance [in breach of contract cases] are not ordinarily allowed. Even if they are foreseeable, they are often particularly difficult to establish and to measure." Restatement (Second) of Contracts § 353, cmt. a, at 149. There are two limited exceptions to this rule: (i) one for damages accompanying physical injury or loss; and (ii) another for mental anguish "of such a kind that serious emotional disturbance was a particularly likely result [at the time of the formation of the contract]." *Id. See* Restatement (Second) of Contracts 351(1), cmt. a, at 135 (1981)("A contracting party is generally expected to take account of those risks that are foreseeable at the time he makes the contract. He is not, however, liable in the event of breach for loss that he did not at the time of contracting have reason to foresee as a probable result of such a breach."); 11 Williston, *On Contracts* § 1347–1348 (3d ed. 1957). The doctrine instructs that if damages are too speculative they will not be awarded. *See Silva v. Albuquerque Assembly & Dist. Freeport Warehouse Corp.,* 106 N.M. 19, 20, 738 P.2d 513, 514 (1987)(holding "damages for emotional distress are not recoverable in an action for breach of contract, whether express or implied, in the absence of a showing that the parties contemplated

such damages at the time the contract was made.").

The denial of recovery for emotional distress damages unaccompanied by physical damages is a firmly rooted limitation notwithstanding a plaintiff's ability to meet the certainty requirement. *See* 3 Farnsworth, *supra* § 12.17, at 288 ("A limitation more firmly rooted in tradition is that generally denying recovery for emotional disturbance, or 'mental distress,' resulting from breach of contract, even if the limitations of foreseeability and uncertainty can be overcome."). The unforeseeable and indeterminate nature of these damages, much like the case of punitive damages, are the prevailing characteristic that renders their award in breach of contract cases extraordinary and unexpected. *See id.*

Because there are no physical injuries or losses in this case, only the second exception is potentially applicable. There are few cases, however, where courts have held a contract falls under this second exception. *See* 22 Am.Jur.2d, Damages § 48, at 71–72 (1988)(listing circumstances that do not fall under this exception).

Compensation for mental suffering unaccompanied by physical loss applies only in extreme cases where the plaintiff's emotional well-being is already at issue at the time of the contract's formation. For instance, when the contract itself's express intent is either to enhance or to protect a plaintiff's mental state, a breach thereof may implicate emotional distress damages. *See* Restatement (Second) of Contracts § 353, at 159. It is only where peace of mind and freedom from worry are part of the bargain that emotional distress damages become applicable.

The classic contexts in which such awards are, indeed, made concern breaches involving "carriers and innkeepers with passengers and guests, contracts for the carriage or proper disposition of dead bodies, and contracts for the delivery of messages concerning death." Restatement (Second) Contracts § 353, cmt. a, at 149. These cases come from both federal and state courts interpreting the Restatement, but all agree that emotional distress damages awards are only appropriate when the case inevitably implicated the plaintiff's mental state at the time of the contract's formation. *See Hirst v. Elgin Metal Casket Co.*, 438 F.Supp. 906, 908 (D.Mont.1977)(finding that mental anguish reasonably resulted when deceased family member's leakproof casket leaked); *Allen v. Jones*, 104 Cal.App.3d 207, 163 Cal.Rptr. 445, 448 (1980)(finding that it was particularly likely that cremated remains lost in transit would cause emotional distress).

The case here does not implicate the issues that the courts have deemed to warrant emotional distress damages awards. Primarily, the contractual relationship between Congress and the funding recipient, on behalf of third-party beneficiaries, is not of a personal nature. The agreement between the federal agency and the recipients is struck without regard to any particular person.

Further, the contractual relationship between Congress and the funding recipient does not involve the life or death issue which ordinarily suggests that a breach of one of the funding conditions—by virtue of a discriminatory practice that the ADA and the Rehabilitation Act prohibit—will particularly, or foreseeably, result in the mental anguish of the third-party beneficiary.

## C. EVOLVING PRINCIPLES OF SPENDING CLAUSE LEGISLATION DO NOT MAKE AVAILABLE EMOTIONAL DISTRESS DAMAGES FOR BREACHES OF FUNDING CONDITIONS.

In 1992, the Supreme Court in *Franklin v. Gwinnett County Pub. Sch.*, 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992), found that the plaintiffs are entitled to be made whole and, therefore, compensatory damages are appropriate forms of relief. *See* 503 U.S. at 69, 112 S.Ct. 1028. That case, however, did not reverse long-standing judicial attitudes regarding emotional distress damages awards in contract cases. The compensatory damages that *Franklin v. Gwinnett County Pub. Sch.* found appropriate do not include extraordinary damages, such as punitive awards and emotional distress damages. *See Barnes v. Gorman*, 536 U.S. at 188, 122 S.Ct. 2097 ("[I]t must be concluded that Title VI funding recipients have not, merely by accepting funds, implicitly consented to liability for punitive damages."); *Bradford v. Iron County C–4 Sch. Dist.*, 1984 WL 1443, at *7 (E.D.Mo.1984)(holding that emotional distress damages are not recoverable under section 504).

Even if the Court were to assume that federal-state coordinated programming pursuant to Spending Clause legislation implicates a plaintiff's mental state, the courts have determined that the relationship between Congress and the funding recipient is different, and, accordingly, courts have not historically recognized emotional distress damages as a legitimate form of relief therein. *See Americans Disabled for Accessible Public Transp. v. SkyWest Airlines, Inc.*, 762 F.Supp. 320, 325 (D.Utah 1991)("Damages for emotional distress or mental anguish ... are unavailable under the Rehabilitation Act."); *Bradford v. Iron County C–4 Sch. Dist.*, 1984 WL 1443, at * 9 ("[T]he Court concludes that damages for mental anxiety and humiliation are not recoverable under § 504 of the Rehabilitation Act for employment discrimination."). In *Bradford v. Iron County C–4 Sch. Dist.*, the court instructed that, even if compensatory damages apply in Title VI and Title VII cases, the phrase "compensatory damages" cannot properly describe emotional distress damages in cases arising from violations of the Rehabilitation Act and Title VI. *Id.* at *6.

Applying the *Barnes v. Gorman* analysis, emotional distress damages are not available for an alleged violation of Title II of the ADA or section 504. Spending Clause legislation generally has as its objective the delivery of services to third-party beneficiaries, not the assurance of peace of mind. *See Barnes v. Gorman*, 536 U.S. at 188, 122 S.Ct. 2097. As stated above, the beneficiaries' mental states were not at issue at the time of the contract's formation.

Further, the issue of emotional distress damages in these cases aligns almost exactly with the issue of punitive damages in *Barnes v. Gorman*. First, as with punitive damages, courts traditionally disfavor emotional distress damages in common law contract actions. Second, like punitive damages, emotional distress damages are indeterminate in scope and do not properly comport with the certainty requirement that the law of contract embodies. Lastly, emotional distress damages tend to be punitive in nature. *See 5 Corbin on Contracts* § 1076, at 377 ("Mental suffering is not itself a pecuniary harm; and it can scarcely be said to be measurable at all in terms of money."). This similarity renders them an inappropriate remedy in these cases. *See, e.g., Krisa v. Equitable Life Assur. Soc.*, 109 F.Supp.2d 316, 323 (M.D.Pa.2000)(noting that emotional dis-

tress damages "closely resemble punitive damages")(quotation marks and citation omitted); *Bradford v. Iron County C-4 Sch. Dist.*, 1984 WL 1443, at *7 ("[D]amages for mental suffering and humiliation are difficult to measure at best, are often sizeable, and have been editorialized as gratuitous bonuses or prize money for prosecuting a successful suit.").

A 1985 Idaho Supreme Court decision summarizes this perspective of emotional distress damages, explaining:

[T]here is no significant, if in fact, any difference between conduct by a defendant which may be seen to justify an award of punitive damages, and conduct which may justify an award of damages for emotional distress. Justification for an award of damages for emotional distress seems to lie not in whether emotional distress was actually suffered by a plaintiff, but rather in the quantum of outrageousness of the defendant's conduct. [Even where] a plaintiff may in fact have suffered extreme emotional distress, accompanied by physical manifestation thereof, no damages are awarded in the absence of extreme and outrageous conduct by a defendant.

*Brown v. Fritz*, 108 Idaho 357, 699 P.2d 1371, 1376 (1985).

The legitimacy of the law of contract rests upon its certainty. *See id.*; *Hadley v. Baxendale*, 156 Eng. Rep. 145 (Ex. 1854). It is not reasonable to assume that community standards of fairness would expose a funding recipient to unlimited liability, especially where a depletion of federal monies would result by enriching one plaintiff to the detriment of the many remaining third parties, who benefit from the program. As Justice Scalia stated in *Barnes v. Gorman*, while "compensatory damages alone 'might well exceed a recipient's level of federal funding,' punitive damages on top of that could well be disas-

trous." 536 U.S. at 188, 122 S.Ct. 2097 (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998)).

Emotional distress damages are not appropriate in cases arising from Spending Clause legislation because of their immeasurability at the time of the contract's formation, because the courts historically have disfavored them as a form of relief in breach of contract cases, and because they are punitive in nature.

In conclusion, punitive damages and emotional distress damages are an inappropriate relief in actions brought pursuant to Title II of the ADA and § 504. According to the Supreme Court's analysis from the 2002 *Barnes v. Gorman case*, damages that courts have not historically awarded in breach of contract cases because of their indeterminate and punitive nature are not appropriate remedies. Such awards could damage federally funded programming.

**IT IS ORDERED** that the Defendant Albuquerque Public Schools Board of Education's motion is granted and the Plaintiffs' claims for punitive damages and for emotional distress damages are dismissed.

Counsel:

Gail Stewart

Albuquerque, New Mexico

Attorney for the Plaintiffs

Michael L. Carrico

Modrall, Sperling, Roehl,

Harris & Sisk, P.A.

Albuquerque, New Mexico

Attorneys for the Defendants